UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MONTE G. HOFFMAN,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No.: 4:20-cv-00163-DCN<br>Criminal No.: 4:13-cr-00012-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Monte G. Hoffman's pro se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Dkt. 1. The Government opposed the Motion. Dkt. 10. Hoffman did not reply.[1]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, the Court DENIES Hoffman's Motion.

---

[1] Due to his frequent address changes, the Court has had significant difficulty communicating with Hoffman and ensuring his receipt of court documents. *See* Dkts. 15, 19, 20, 22, 23; Crim. Dkts. 206, 223. However, to the knowledge of the Court, Hoffman ultimately received notice of the deadline by which he needed to submit a reply and opted not to. At any rate, Idaho Local Civil Rule 83.6(d) states that it is the duty of a pro se litigant to update the Court when the litigant has a change in address. To the extent the Court remains misinformed regarding Hoffman's mailing address, it is Hoffman's duty to correct such misinformation.

## II. BACKGROUND

In December 2012, law enforcement officers saw Hoffman briefly visit a house that was under surveillance for suspected drug activity. The officers followed Hoffman and eventually pulled him over after watching him commit multiple traffic violations. During the stop, the officers questioned Hoffman and ultimately determined that it was necessary to conduct a frisk. During the frisk, Hoffman attempted to flee, but was quickly stopped and arrested. In a search conducted incident to his arrest, officers found drugs and drug paraphernalia on Hoffman's person.

Hoffman was subsequently charged with Possession with Intent to Distribute Methamphetamine. Crim. Dkt. 3. In the leadup to trial, Hoffman, through counsel, filed a Motion to Suppress, arguing that the officers' stop and frisk violated his rights under the Fourth and Fifth Amendments. Crim. Dkts. 41, 63, & 67.[2] The Court denied Hoffman's Motion (Crim. Dkt. 68) and the case proceeded to trial. The jury ultimately returned a guilty verdict, and Hoffman was sentenced to 120 months[3] of imprisonment with eight years of supervised release. Crim. Dkt. 170.

Hoffman appealed his conviction in December 2015. Crim. Dkt. 172. In June 2017, the Ninth Circuit vacated Hoffman's judgment and sentence and remanded to the Court to reconsider Hoffman's Motion to Suppress in light of intervening caselaw. Crim. Dkt. 184. Upon reconsideration, the Court again denied Hoffman's Motion to Suppress, and

---

[2] The initial Motion (Dkt. 41) was not supported by a Memorandum. Hoffman's counsel subsequently filed a Memorandum in Support of the Motion (Dkt. 63) and a "Closing Argument" that raised similar arguments (Dkt. 67).
[3] Hoffman was sentenced to 120 months of imprisonment for Count Two of his indictment and 36 months for Count Three to be served concurrently.

Hoffman's original sentence was re-imposed. Crim. Dkts. 193–94. Hoffman promptly appealed the second denial of his Motion (Crim Dkt. 195), but this time, the Ninth Circuit affirmed the holding of the Court and upheld Hoffman's conviction and judgment (Crim. Dkt. 199).

Roughly one year later, Hoffman filed the instant Motion, asserting he received ineffective assistance of counsel from four of his attorneys and claiming prosecutorial misconduct. *See generally* Dkt. 1. He asks the Court to (1) order discovery and an evidentiary hearing, (2) vacate his conviction, and (3) grant any other relief the Court finds appropriate. *Id.* at 54.

### III. LEGAL STANDARDS

#### A. 28 U.S.C. § 2255

Title 28 U.S.C. § 2255(a) provides four grounds on which a federal judge may grant relief to a federal prisoner who challenges the imposition or length of his or her custody: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence is otherwise "subject to collateral attack."

Rule 4(b) of the Rules Governing § 2255 Proceedings provides that a federal district court judge may summarily dismiss a § 2255 motion "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." A court need not hold an evidentiary hearing in a § 2255 case when a prisoner's credibility may be "conclusively decided on the basis of

documentary testimony and evidence in the record." *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir. 1988) (quoting *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988)). Stated another way, a hearing is unnecessary where the petitioner's allegations are "palpably incredible or patently frivolous." *United States v. Leonti*, 326 F.3d 1111, 1116 (cleaned up).

On the other hand, the court must hold a hearing if the petitioner alleges facts that, if true, would entitle him to relief. *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003). But for a hearing to be appropriate, "the moving papers [must be] sufficiently definite, specific, detailed and nonconjectural" to allow the court to conclude that contested factual issues are truly at issue. *United States v. Ayers*, 924 F.2d 1468, 1481 (9th Cir. 1991).

A court may dismiss a § 2255 motion at other stages of the proceeding such as pursuant to a motion by respondent, after consideration of the answer and motion, or after consideration of the pleadings and an expanded record. *See* Advisory Committee Notes Following Rule 8 of the Rules Governing § 2254 Proceedings, incorporated by reference into the Advisory Committee Notes following Rule 8 and Rules Governing § 2255 Proceedings. If a court does not dismiss the proceeding, the court then proceeds to a determination under Rule 8 of whether an evidentiary hearing is required.

### B. Ineffective Assistance of Counsel

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including trial,

sentencing, and direct appeal. *Leonti*, 326 F.3d at 1116–17. To challenge a sentence on grounds of ineffective assistance of counsel, a § 2255 movant must meet the widely known two-part test: (1) counsel's performance was deficient, and (2) the deficiency prejudiced his defense. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).

To establish deficient performance, the movant must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Under the performance prong, there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, the movant must prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. In other words, a movant must make a showing sufficient to undermine a court's confidence in the outcome. *Id.*

Informed, strategic choices by counsel are "virtually unchallengeable." *Id.* at 689–90. Courts approach strategic choices with high levels of deference because it is "too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and the court must "eliminate the distorting effects of hindsight." *Id.*

A claim of ineffective assistance of counsel may be rejected on either the deficiency or prejudice prong, and a court need not address both. *See United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005). Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

### C. *Brady* Violations

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the

MEMORANDUM DECISION AND ORDER – 5

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a petitioner must prove: (1) the evidence in question is "favorable to the accused, either because it is exculpatory or because it is impeaching;" (2) the evidence was "suppressed by the State, either willfully or inadvertently;" and (3) the suppression prejudiced the accused. *United States v. Kohring*, 637 F.3d 895, 901 (9th Cir. 2011) (cleaned up).

Evidence is prejudicial "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 902 (cleaned up). "A reasonable probability of a different result exists when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008).

## IV. ANALYSIS

The Court will structure its analysis to mirror Hoffman's Motion, briefly addressing his complaints about each attorney, then analyzing his allegation of prosecutorial misconduct.

### A. Shane Reichert

Shane Reichert represented Hoffman from September 6, 2013, to December 4, 2014. Reichert briefed and argued Hoffman's Motion to Suppress. *See* Crim. Dkts. 63, 65 & 67. Reichert spent the majority, but not entirety,[4] of his brief arguing that the officers' stop of

---

[4] Despite Hoffman's assertions to the contrary, Reichert also argued, albeit briefly, that the stop itself was unlawful. *See* Crim. Dkt. 63, at 6, 9–10; Dkt. 10-1, at 5.

Hoffman was impermissibly extended and that the frisk of Hoffman was unlawful. Hoffman now argues that Reichert's assistance was ineffective because (1) he did not place greater emphasis on the legality of the stop, (2) he did not properly prepare for the hearing on the Motion to Suppress, and (3) he did not file a pre-trial discovery motion or a motion to compel discovery of certain evidence. Dkt. 1-1, 6–23. The Court will address each contention in turn.

### 1. Legality of the Stop

As noted above, the Court must determine whether Reichert's actions related to his representation of Hoffman were objectively unreasonable, and if so, whether they prejudiced Hoffman.

The Court finds that Reichert's decision to focus his defense efforts on the length of the stop and the frisk were not objectively unreasonable. Reichert has submitted an affidavit in which he attests that he and Hoffman had several discussions regarding strategy. Dkt. 10-1, at 4. After these discussions, Reichert concluded that placing a greater focus on the legality of the stop "would have confused the issues, been detrimental to [Hoffman's] defense and hindered [Reichert's] preparation for the motion hearing." *Id.* Strategic decisions like this one are "virtually unchallengeable." *See Strickland*, 466 U.S. at 689–90. Further, considering the fact that Reichert *did* challenge the legality of the stop—at least in passing—the Court would be hard-pressed to find his actions objectively unreasonable.

### 2. Hearing Preparation

With regards to Reichert's preparation for the hearing on the Motion to Suppress, Hoffman claims Reichert did not satisfactorily impeach the government's witnesses—

MEMORANDUM DECISION AND ORDER – 7

Detective Kempf and Trooper Edgley. Dkt. 1-1, at 8–14. He also argues that Reichert did not adequately investigate the supposed existence of footage from the patrol car showing that Hoffman did not commit any traffic violations. *Id.* at 14–20.

The testimonies of Kempf and Edgley indicate that, after stopping at an intersection in the middle lane of a three-lane road, Hoffman, without signaling, made a right turn, cutting across the turn lane. Crim. Dkt. 193, at 3. Hoffman takes issue with the fact that the officers' testimonies from the incident report, before the grand jury, and at the suppression hearing do not all describe his conduct in the exact same way, and he claims that Reichert should have pressed the officers on these inconsistencies. Dkt. 1-1, at 8–14. For example, in different settings, the officers testified to stopping Hoffman for crossing over a solid white line, cutting across a turn lane, making an illegal lane change, and not using a turn signal. *Id.* But it is not unreasonable to conclude that *all* these assertions were used to describe the *same behavior*. In other words, a turn from the middle lane of a three-lane-road requires cutting across a solid white line and a turn lane. Doing so, particularly without signaling, would be illegal. Thus, the Court concludes it was not objectively unreasonable—in fact, it was probably wise—for Reichert to focus his cross-examination efforts elsewhere.

Turning to the video, the record indicates that Edgley's patrol car recorded his stop of Hoffman, but that the recording did not commence in time to record Hoffman's traffic violations. *See* Crim. Dkt. 193, at 4. Video and audio from the recording were shown during the suppression hearing and admitted as evidence at trial. *Id.* Hoffman devotes a substantial portion of his ineffective assistance claims against Reichert and each of his other attorneys arguing that the video introduced at trial was incomplete and/or tampered with and that his

attorneys should have sought out the "original, uncut" version. *See generally* Dkt. 1-1. In support of his argument, he claims his first attorney, Steven Thompson, told him that he had seen a video that showed Hoffman using his turn signal and did not show him improperly crossing lanes. *Id.* at 4. Hoffman also asserts that the recording system used by Edgley's patrol car has an auto-record feature that automatically stores footage from ninety seconds before the record feature is activated, but that the video introduced in this case begins only thirty seconds before Edgley activated his lights. *Id.* at 16. From this, Hoffman infers that the government has tampered with the video to eliminate any exculpatory evidence it initially contained. *Id.* at 16.

Addressing Hoffman's contentions, Reichert states that he asked both Thompson and Michael Fica—the prosecuting attorney—about the existence of any video besides the one that was ultimately admitted as evidence. Dkt. 10-1, at 2–3. Neither had any knowledge of a separate video. *Id.* Reichert states that in his discussion with Thompson, Thompson affirmed that his review and assessment of the video was identical to Reichert's. *Id.* at 3. He did *not* claim to have seen footage of Hoffman using his blinker *nor* of Hoffman executing a proper turn. Further, Reichert states that he reviewed several other videos taken by the same type of camera, all of which left him with the impression that the video introduced here was not tampered with or altered. *Id.* Having determined that no alternate video existed, Reichert opted to focus his arguments at the suppression hearing on the frisk and the extension of the stop. This was not objectively unreasonable, meaning Reichert's assistance was not ineffective.

Further, even if such a video *did* exist, and even if the Court determined that

MEMORANDUM DECISION AND ORDER – 9

Reichert's failure to obtain the video was objectively unreasonable, Hoffman cannot show that the failure to introduce the video prejudiced him. The Court has determined that there were two justifications for the stop—investigation of Hoffman's traffic violations *and* investigation of Hoffman's visit to a suspected drug house. Crim. Dkt. 193 at 13. Assuming a video showed there were no traffic violations to investigate, Edgley *still* would have stopped Hoffman for visiting the drug house and *still* would have discovered the drugs. Thus, the existence of the video has no bearing on Hoffman's ultimate conviction.

    3.  *Pre-Trial Discovery/Motion to Compel*

In Hoffman's third complaint against Reichert, he largely reiterates his arguments about the alleged video, claiming that Reichert did not move to compel production of the exculpatory video. But these arguments fail for the reasons discussed above—Hoffman has not shown sufficient evidence the video exists, and even he had, failure to find the video would not have prejudiced Hoffman.

    4.  *Summary*

Hoffman has not shown that Reichert's conduct was objectively unreasonable, nor that Reichert's conduct prejudiced him. Accordingly, the Court DENIES his claims of ineffective assistance of counsel as to Reichert.

**B. Alan Johnston**

The relationship between Hoffman and Reichert eventually broke down, resulting in Reichert's withdrawal from representing Hoffman. Crim. Dkt. 104. In Reichert's stead, the Court appointed Alan Johnston. *Id.* Johnston represented Hoffman from December 4, 2014, to May 21, 2015. During that time, Hoffman argues that Johnston failed to

investigate the existence of the allegedly exculpatory video, failed to hire a defense expert to testify about the purity of the meth found on Hoffman, and was generally difficult to contact. Dkt. 1-1, at 23–31.

The Court declines to further discuss Johnston's conduct related to the video because the same considerations discussed above apply equally here.

Regarding the hiring of a defense expert, Johnston asserts that he spoke with an individual Hoffman recommended and was making "some headway" on hiring an expert when he was informed that Hoffman, who had been on pre-trial release, had absconded. Dkt. 10-3, at 3. Hoffman did not maintain contact with Johnston while on the run, making it impossible for Johnston to finalize the hiring of experts. *Id.* After Hoffman was taken back into custody, he told Johnston he wanted a different attorney, so Johnston withdrew. Crim. Dkt. 137.

Nothing in the record indicates that Johnston's behavior toward Hoffman was in any way objectively unreasonable. He complied with Johnston's instruction to investigate defense experts. His progress was interrupted only when Hoffman absconded. Further, minor communication troubles are to be expected in any relationship. Here, those troubles were compounded by Hoffman's choices. Under such circumstances, the Court cannot reasonably hold that Johnston's efforts fell outside of the wide range of acceptable professional conduct. *See Strickland*, 466 U.S. at 689. Therefore, the Court DENIES Hoffman's claim of ineffective assistance of counsel as to Johnston.

### C. Neal Randall

Johnston was replaced by Neal Randall, who represented Hoffman from May 21,

2015, through Hoffman's trial, and up to Randall's withdrawal on January 14, 2016. Hoffman raises the same failure-to-investigate and failure-to-prepare arguments against Randall as he raised against his other attorneys. Dkt. 1-1, at 31–35. However, here he adds complaints that Randall did not object to the Pre-Sentence Investigation Report (the "PSR") and did not challenge Hoffman's classification as a "career offender" at sentencing. *Id.* at 35–37. The Court will address these complaints in turn.

1. *Video, Defense Expert, and Purity Investigation*

Regarding Randall's failure to investigate the alleged existence of the "original uncut video," *id.* at 33, the Court adopts the reasoning already expressed above, adding only that Randall has testified to investigating the video, talking with Fica, and concluding "there was no reason to suspect any manipulation with the video whatsoever." Dkt. 10-4, at 1.

Randall does not appear to have pursued the hiring of a defense expert or an investigation into the purity of Hoffman's meth, but Hoffman has not shown that such a failure was objectively unreasonable. Randall states that Hoffman was "attempting to make holes in the prosecution that did not exist," and he chose, instead, to focus on what he deemed to be more-promising avenues. Dkt. 10-4, at 1–2. The Court defers to Randall's judgment regarding these strategic decisions. Hoffman may disagree with Randall's choices. But disagreement, without more, does not constitute ineffective assistance of counsel.

2. *Pre-Sentence Investigation Report*

Hoffman claims the PSR contained "many inaccuracies" that "needed to be fixed,"

and claims Randall was ineffective for not fixing them. Dkt. 1-1, at 35. Randall counters that the PSR was mostly accurate and that the "inaccuracies" raised by Hoffman would not have influenced his sentence. Dkt. 10-4, at 3.

As Hoffman acknowledges, his argument here lacks the factual backing necessary to show ineffective assistance of counsel. Dkt. 1-1, at 36.[5] Hoffman bears the burden of showing that Randall's behavior fell below the standard of objective reasonableness. He has not carried that burden here.

### 3. Career-Offender Classification

Next, Hoffman claims that his sentence was enhanced because he was improperly classified as a career offender, and he charges Randall with ineffective assistance for failing to raise this issue at sentencing. *Id.* at 36–37. But Hoffman has shown no evidence that he received a career-offender enhancement. In fact, it appears that the enhancement Hoffman received was the result of prior felony drug offenses, and not career-offender status. *See* Dkt. 10, at 15–16. Because it is not objectively unreasonable to decline to challenge an enhancement that one's client did not receive, Hoffman's assertion of ineffective assistance is not well-taken.

### 4. Summary

Hoffman has not shown that any of Randall's conduct was objectively unreasonable nor prejudicial. Thus, the Court DENIES his claims of ineffective assistance of counsel as to Randall.

---

[5] He raises this argument in hopes that, if one of his other claims is found worthy to proceed, he will be able to supplement this argument with the necessary factual support.

### D. Jonathan Hallin

After Randall's withdrawal, the Court appointed Jonathan Hallin to represent Hoffman in his appeal of the Court's denial of his Motion to Suppress. Crim. Dkt. 177. Hoffman—again relying on his belief in the existence of an exculpatory video—alleges that Hallin's representation on appeal was ineffective because he failed to challenge the legality of the traffic stop. Dkt. 1-1, at 37–42. He also argues that Hallin was ineffective for failing to petition for a rehearing en banc after the Ninth Circuit affirmed the Court's denial, and for failing to petition the Supreme Court for certiorari. *Id.* at 42.

#### 1. Failure to Challenge the Stop

Hallin, like each of Hoffman's other attorneys, "determined that the record did not support Mr. Hoffman's suspicions that the audio/video recording of his traffic stop had been manipulated." Dkt. 10-2, at 2. That alone would be reason enough not to raise the issue. However, Hallin's decision is insulated even further because the issue was not sufficiently developed at trial to be raised on appeal. *Id.* at 4. Reichert raised the issue in passing, and Hoffman raised a pro se Motion to Compel on the eve of trial, requesting production of the "original video." Crim. Dkt. 162. But that motion was denied on procedural grounds because Hoffman was represented at the time, and a represented party cannot file pro se motions. Crim. Dkt. 167. Without any further development of the issue on which to rely, Hallin opted to focus on those issues that were discussed in greater detail before the District Court. Dkt. 10-2, at 4. The Court will not second-guess this strategic decision.

MEMORANDUM DECISION AND ORDER – 14

### 2. Failure to Petition for Rehearing/Certiorari

The Federal Rules of Appellate Procedure state that a rehearing en banc is typically not appropriate unless "en banc consideration is necessary to secure or maintain uniformity of the court's decisions" or "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a). Hoffman has not shown that either situation applies here.[6] Nor has he shown that it was objectively unreasonable for Hallin to decline to petition for rehearing en banc and to decline to petition for certiorari from the Supreme Court.

### 3. Summary

Nothing in the record indicates Hallin acted in an objectively unreasonable manner in his representation of Hoffman on appeal. Accordingly, the Court DENIES Hoffman's claims of ineffective assistance of counsel as to Hallin.

### E. Prosecutorial Misconduct

In Hoffman's final argument, he charges the prosecution with *Brady* violations, falsification of evidence, and presentation of false testimony based on his beliefs regarding the patrol-car video. As noted above, under *Brady*, a person's due process rights are violated when the government suppresses evidence that is favorable to the accused and such suppression results in prejudice. *Brady*, 373 U.S. at 87; *Kohring*, 637 F.3d at 901. Here, Hoffman has not shown suppression, he has not shown favorability, and he has not shown prejudice because he has not shown that the video *exists*. His foundation for the

---

[6] He states flatly that his case "involved a situation where en banc consideration was 'necessary to secure or maintain the uniformity of the court's decisions,'" but it is not clear why he thinks this is the case. Dkt. 1-1, at 42. The Court assumes Hoffman's belief is tied to his belief in the existence of the supposedly exculpatory video; but the Court has already discussed ad nauseam why this belief is insufficient to require legal action on the part of any attorney.

MEMORANDUM DECISION AND ORDER – 15

video's existence consists entirely of an unsupported alleged statement from a prior attorney (the veracity of which the attorney himself contests) and his personal perusal of dashboard-camera informational materials. This is not enough to establish a *Brady* violation.

Further, Hoffman's speculation that an exculpatory video exists is not enough to show that the government falsified evidence or presented false testimony, and his contentions on this point are not definite, specific, detailed, or non-conjectural enough to warrant a hearing. *See Ayers*, 924 F.2d at 1481. In fact, Hoffman's position rests almost *entirely* on conjecture, and the Court deems it "palpably incredible." *Leonti*, 326 F.3d at 1116. Accordingly, the Court DENIES Hoffman's claim of prosecutorial misconduct without a hearing.

### V. CONCLUSION

Hoffman has not shown that any of his attorneys acted in a way that was objectively unreasonable or prejudicial, nor has he shown prosecutorial misconduct. These facts can be conclusively determined "on the basis of documentary testimony and evidence in the record." *Espinoza*, 866 F.2d at 1069 (cleaned up). Accordingly, an evidentiary hearing is not necessary. Hoffman's Motion to Vacate, Set Aside, or Correct Sentence is DENIED, and this case is CLOSED.

///
///
///
///

## VI. ORDER

1. Hoffman's Motion to Vacate, Set Aside, or Correct Sentence (Dkt. 1) is hereby DENIED.

2. This case is CLOSED.

DATED: June 10, 2024

_____
David C. Nye
Chief U.S. District Court Judge